**AMERICAN STOCK EXCHANGE, LLC, Plaintiff,**

v.

**MOPEX, INC., Defendant.**

**No. 00 Civ. 5943 SAS.**

United States District Court, S.D. New York.

Dec. 12, 2002.

See also 230 F.Supp.2d 333.

Stuart I. Friedman, Andrew A. Wittenstein, Paul S. Grossman, Friedman, Wittenstein & Hochman, a Professional Corporation, New York City, William K. West, Howrey Simon Arnold & White, John J. Flood, National Association of Securities Dealers, Inc., Washington, D.C., for Plaintiff.

Bradford P. Lyerla, Stephen R. Auten, Wallenstein & Wagner, Ltd., James R. Figliulo, Jeff D. Harris, James H. Bowhay, Michael K. Desmond, Figliulo & Silveran, P.C., Chicago, IL, Adam Landa, Greenburg Traurig, LLP, New York City, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Mopex, Inc. ("Mopex") has filed objections to the Report and Recommendations of United States Magistrate Judge Michael Dolinger ("R & R"), dated July 25, 2002, which recommends that the American Stock Exchange LLC's (the "AMEX") motion to preclude Mopex from asserting that the AMEX infringed claim 34 of Mopex's United States Patent No. 6,088,685 (the '685 patent') be granted. I have duly considered Mopex's objections. For the reasons set forth below, Mopex's objections are denied, and Judge Dolinger's R & R is accepted and adopted in full.

### I.  GENERAL BACKGROUND

The AMEX filed the instant lawsuit against Mopex on August 10, 2000, seeking a declaratory judgment of non-infringement or invalidity of Mopex's '685 patent, which describes certain processes for creating investment products, known as exchange-traded funds. *See* Complaint ("Compl.") at ¶¶ 14, 15. On September 15, 2000, defendant filed an answer and counterclaim in this Court, alleging that the AMEX had infringed the '685 patent, but not specifying which

aspects of the patent had been infringed. *See* Counterclaim at ¶ 13.

Throughout the course of fact discovery, the AMEX aggressively sought to obtain full disclosure of Mopex's case, including identification of which patent claims Mopex was contending had been infringed. *See, e.g.,* 11/10/00 Plaintiff's First Notice of Deposition of Defendant, Ex. B to Declaration of Paul S. Grossman, Esq., attorney for plaintiff ("Grossman Dec."), at ¶ 11 (requesting "[t]he full and complete factual basis for Mopex's claim that [the] AMEX has infringed the '685 patent"); 1/9/01 Deposition of Kenneth Kiron, president of Mopex ("Kiron Dep."), Ex. D to Grossman Dec., at 43–46 (asking deponent to identify which claims of the '685 patent have been asserted by Mopex against the AMEX); 7/11/01 Plaintiff's Second Set of Interrogatories to Defendant, Ex. E to Grossman Dec., at ¶¶ 1, 2 (asking Mopex to identify "the claims of the '685 patent which Mopex alleges to be infringed"); 8/7/01 Plaintiff's First Requests for Admissions, Ex. G to Grossman Dec., at ¶¶ 7, 10, 15 (asking Mopex to admit that it "does not assert in this action that the listing and trading on the AMEX of [the accused investment products] infringes any independent claim of the '685 patent other than claims 2, 13, 24"); 1/18/02 Deposition of Clifford J. Weber, a senior officer at the AMEX ("Weber Dep."), Ex. J to Grossman Dec., at 567–68 (asking Mopex's attorney, after he questioned an AMEX witness about claim 34, whether it was Mopex's position that the AMEX was infringing claim 34).

In each of Mopex's responses to the AMEX's discovery requests, Mopex identified only independent claims 2, 13, and 24, but noted that it was continuing to investigate the AMEX's infringement and would update its responses when it received additional information. *See, e.g.,* Kiron Dep. at 45–46 ("Right now as of today we're focusing on independent claim 2, independent claim 13 and independent claim 24 and various dependent claims that are linked to the independent claims."); 8/10/01 Defendant's Answers to Plaintiff's Second Set of Interrogatories, Ex. F to Grossman Dec., at ¶¶ 1, 2 (identifying only independent claims 2 and 13 and various dependent claims and promising to update its response upon receipt of additional information);[1] 9/17/01 Defendant's Responses to Plaintiff's First Requests for Admissions, Ex. H to Grossman Dec., at ¶¶ 7, 10, 15 (failing to identify claim 34 and promising to supplement its responses after the deposition of Cliff Weber, plaintiff's designated Rule 30(b)(6) witness).

One month after the conclusion of fact discovery, and only weeks before the scheduled exchange of expert witness reports, Mopex announced, for the first time, that it was contending that the AMEX had infringed claim 34. *See* Defendant's Supplemental Answers to Plaintiff's Second Set of Interrogatories, Ex. K to Grossman Dec., at ¶¶ 1, 2 (amending its answers to the AMEX's interrogatories by identifying claim 34 as infringed).

On April 6, 2002, the parties exchanged expert reports. Mopex's expert, Mr. C. Michael Carty, opined in his report that the AMEX was infringing claim 34. *See* R & R at 11. In response, the AMEX's infringement expert, Mr. Gary C. Gastineau, issued a report, in which he opined, for the first time, on claim 34, acknowledging that he had not addressed the claim in his prior report because he was "unaware Mopex intended to assert the claim in the litigation" and that he was limited in his ability to now address the claim because the AMEX had taken no discovery specific to claim 34. *See id.*

## II. PROCEDURAL HISTORY

On May 6, 2002, the AMEX moved to preclude Mopex from asserting that claim 34 of the '685 patent was being infringed by the AMEX because Mopex had failed, until well after the completion of fact discovery, to identify claim 34. On May 13, 2002, this Court referred the AMEX's motion to Magistrate Judge Dolinger for a report and recommendation. On July 25, 2002, Judge Dolinger issued an R & R, finding that Mopex's inexcusable delay had "plainly and unfairly prejudiced the AMEX's trial preparation"

---

1. As Judge Dolinger noted, the inference from these responses was that Mopex had dropped its contention that independent patent claim 24 was being infringed. *See* R & R at 7 n. 3.

and recommending that the AMEX's motion to preclude be granted. *See* R & R at 3.

On August 7, 2002, Mopex filed the instant objections to Judge Dolinger's conclusions that: (1) Mopex's assertion of claim 34 unfairly prejudices the AMEX's trial preparation; and (2) Mopex unjustifiably delayed in supplementing its interrogatory answers pursuant to Fed.R.Civ.P. 26(e)(2). *See* Mopex, Inc.'s Objections to Magistrate Judge Dolinger's Report and Recommendations ("Obj.") at 1.

## III. FACTS

The Court incorporates by reference the detailed facts set forth in the R & R and makes the following additions: On January 26, 2001, the AMEX received two legal opinions in which its counsel opined that every claim of the '685 patent, including claim 34, is invalid under 35 U.S.C. § 112, ¶ 1. *See* 1/16/01 Letter to Teri Nelson Jacoby, Office of General Counsel, National Association of Securities Dealers, Inc., from Lawrence Kolodney, Ex. B to Obj.; 1/16/01 Letter to Jacoby from Kolodney, Ex. C to Obj. On February 7, 2001, the AMEX received two additional opinions regarding the non-infringement of all of the claims of the '685 patent. *See* 2/7/01 Letter to Jacoby from Kolodney, Ex. D to Obj.; 2/7/01 Letter to Jacoby from Kolodney, Ex. E to Obj.

## IV. STANDARD OF REVIEW

"[A] judge may designate a magistrate to hear and determine any pretrial matter pending before the court," except for certain enumerated dispositive motions. *See* 28 U.S.C. § 636(b)(1)(A); *see also* Fed.R.Civ.P. 72(b) (referring to dispositive motions as those "dispositive of a claim or defense of a party"). Although a magistrate judge "may hear dispositive pretrial motions, he may only submit proposed findings of fact and recommendations for disposition of the matter." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.1990). The district court must make *de novo* determinations as to those matters to which a party objects. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R.Civ.P. 72(b). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *See* 28 U.S.C. § 636(b)(1)(C); *see also* Fed.R.Civ.P. 72(b).

■ A magistrate judge, however, may issue orders regarding non-dispositive pre-trial matters. *See Hoar*, 900 F.2d at 525. The district court reviews such orders under the "clearly erroneous or contrary to law" standard. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 72(a). A finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Derthick v. Bassett–Walker Inc.*, Nos. 90 Civ. 5427, 90 Civ. 7479, 90 Civ. 3845, 1992 WL 249951, at *8 (S.D.N.Y. Sept. 23, 1992) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Pursuant to this highly deferential standard of review, magistrate judges are afforded broad discretion in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused. *See Lanzo v. City of New York*, No. 96 Civ. 3242, 1999 WL 1007346, at *2 (E.D.N.Y. Sept. 21, 1999) (citation omitted).

"Matters concerning discovery generally are considered non-dispositive of the litigation." *Hoar*, 900 F.2d at 525 (citing 7 Moore, Lucas & Sinclair, Jr., Moore's Federal Practice ¶ 72.03, at 72–23 (2d ed.1989)). Sanctions pursuant to Fed.R.Civ.P. 37 for noncompliance with discovery orders are typically within the discretion of the court, reviewable by the district court under the "clearly erroneous or contrary to law" standard. *See Hoar*, 900 F.2d at 525 (citations omitted). However, the imposition of some discovery sanctions under Rule 37, may be considered "case-dispositive," requiring *de novo* review. *See id.; see also* Moore's Federal Practice ¶ 72.04, at 72–51 ("Sanctions may be either dispositive or non-dispositive, and hence the treatment of them by the magistrate and the district judge varies with the severity of the penalty being considered.").

The courts are split on the standard of review for sanctions that affect a party's ability to assert a particular claim or defense.

On the one hand, courts tend to review orders striking pleadings or affirmative defenses under a *de novo* standard, treating them as dispositive because the party is foreclosed from asserting the claim or claims in the litigation. *See, e.g., Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988) (holding Rule 37 sanction striking pleadings with prejudice constitutes involuntary dismissal of action); *Zises v. Department of Social Servs. of Human Resources Admin. of City of New York*, 112 F.R.D. 223, 226 (E.D.N.Y.1986) (finding *de novo* review appropriate where sanction extends to dismissing a complaint with prejudice); *Starlever Hydraulik v. Mohawk Res. Ltd.*, No. 95 Civ. 0094, 1996 WL 172712, at *3 (N.D.N.Y. Apr. 10, 1996) (granting *de novo* review of magistrate judge's order to preclude one of defendant's principal defenses); *United States v. Davis*, 794 F.Supp. 67, 68 (D.R.I. 1992) (finding order striking affirmative defenses is dispositive of those defenses).

On the other hand, where magistrate judges prohibit a party from asserting a potential claim, courts tend to review the preclusion of such a claim under a "clearly erroneous" standard. *See, e.g., Equal Employment Opportunity Comm'n v. Venator Group*, No. 99 Civ. 4758, 2001 WL 246376, at *4 (S.D.N.Y. Mar. 13, 2001) (reviewing order precluding plaintiff from pursuing claims of individuals whose questionnaire responses were not timely served under "clearly erroneous" standard); *Benedict v. Amaducci*, No. 92 Civ. 5239, 1995 WL 413206, at *11 (S.D.N.Y. July 12, 1995) (treating magistrate judge's denial of leave to amend complaint to assert additional claims as non-dispositive ruling that will not be overturned unless "clearly erroneous"); *Devore & Sons, Inc. v. Aurora Pac. Cattle Co.*, 560 F.Supp. 236, 238 (D.Kan.1983) (finding magistrate judge's striking of defendants' counterclaim does not constitute involuntary dismissal). *But see Scally v. Daniluk*, No. 96 Civ. 7548, 1997 WL 639036, at *1 (S.D.N.Y. Oct. 15, 1997) (finding magistrate judge's denial of leave to amend pleading is dispositive where complaint would be dismissed absent leave to amend).

■ In the case at bar, Mopex is attempting to assert a claim that it failed to identify during fact discovery. The parties agree that if Mopex is precluded from asserting claim 34 in this litigation, then Mopex would be barred from asserting that claim against the AMEX in a subsequent action based upon the same accused products or processes. *See* 11/21/02 Letter from the AMEX to the Court ("AMEX Ltr.") at 1; 11/27/02 Letter from Mopex to the Court ("Mopex Ltr.") at 1. The AMEX argues nonetheless that the fact that Mopex will be precluded from bringing claim 34 in a subsequent lawsuit does not require the Court to review the R & R *de novo*. *See* AMEX Ltr. at 3–4.

■ It is well established, under the doctrine of "claim splitting," that a party cannot avoid the effects of *res judicata* by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits. *See Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir.2000); *Mars Inc. v. Nippon Conlux Kabushiki–Kaisha*, 58 F.3d 616, 619 (Fed.Cir.1995). Rather, a party must bring in one action all legal theories arising out of the same transaction or series of transactions. *See Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir.2001).

■ Claim preclusion applies to all legal theories that were actually litigated or that should have been litigated in the previous action. *See id.* Thus, a plaintiff is precluded from raising a particular legal theory in a subsequent action even if she was not permitted to assert that particular theory in the first action due to her own dilatory conduct. *See Kearns v. General Motors Corp.*, 94 F.3d 1553, 1555 (Fed.Cir.1996) (barring plaintiff from bringing a subsequent suit on patents against the same infringer where those patents were part of a previous lawsuit that was involuntarily dismissed for plaintiff's "inadequate compliance with the court's orders and deadlines"); *Nilsen v. City of Moss Point*, 701 F.2d 556, 563 (5th Cir.1983) (holding that plaintiff who was precluded from asserting a § 1983 theory due to her own "unexplained dilatoriness" could not pursue that theory in a subsequent action).

Courts have consistently held that a plaintiff is barred from asserting a patent in a subsequent action against products or processes if that patent could have been asserted in the prior action. *See, e.g., Panoualias v. National Equip. Co.,* 269 F. 630, 632–33 (2d Cir.1920) (commenting "[e]ven if it were suggested (as it is not) that there are claims other than Nos. 37 and 38 which may be infringed by the divided belt machine, since that device was before the trial court [in the first action], it was the duty of plaintiff then and there to put forth all of the claims that were infringed"); *Kearns,* 94 F.3d at 1555 (barring plaintiff from bringing subsequent action where previous action on same patents was dismissed); *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,* No. 95 Civ. 7900, 2001 WL 38285, at *1 (S.D.N.Y. Jan. 16, 2001) (dismissing claims against two defendants where plaintiff had previously sued those defendants on same patents); *General Ry. Signal Co. v. Union Simplex Train Control Co.,* 23 F.Supp. 667, 671 (D.Del.1938) (prohibiting plaintiff from pursuing in a second infringement action patent claims that could have been brought in the first infringement action), *aff'd,* 106 F.2d 1018 (3d Cir. 1939).

Because Mopex's assertion of claim 34 unquestionably arises out of the "same transaction or series of transactions" as its assertion of independent patent claims 2, 13, and 24,[2] Mopex would be precluded from bringing a second action against the AMEX asserting infringement of claim 34 against any products or processes that could have been addressed in this litigation. Thus, if Mopex is precluded from asserting claim 34 in this lawsuit, Mopex will be barred forever from asserting that claim against the AMEX. A preclusion order here is therefore "dispositive" of claim 34.

The AMEX attempts to avoid this inevitable conclusion by first defining "claim," as it is used in Rule 72, broadly to mean "cause of action," and then arguing that preclusion of patent claim 34[3] is not dispositive because it disposes only of an "alternative theory of infringement"—not Mopex's entire cause of action for infringement of the '685 patent. *See* AMEX Ltr. at 4. The AMEX's focus on the meaning of the term "claim" unnecessarily confuses the relevant inquiry, which is whether preclusion of patent claim 34 would be dispositive.

A ruling is "dispositive" if it resolves substantive claims for relief rather than mere issues in the litigation. *See Vaquillas Ranch Co. v. Texaco Exploration & Prod., Inc.,* 844 F.Supp. 1156, 1160 (S.D.Tex.1994) (explaining that "dispositive" rulings are those that "finally resolve a party's 'claim or defense,'" not those that simply "resolve[ ] an issue"); *Federal Ins. Co. v. Kingsbury Props., Ltd.,* Nos. 90 Civ. 6211, 90 Civ. 6357, 1992 WL 380980, at *2 (S.D.N.Y. Dec. 7, 1992) (distinguishing dispositive from nondispositive matters based on whether they "resolve the substantive claims for relief alleged in the pleadings"); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* 734 F.Supp. 1071, 1080 (S.D.N.Y.1990) (same). Because a putative infringer can be held liable for infringement on a single patent claim, *see Panduit Corp. v. Dennison Mfg. Co.,* 836 F.2d 1329, 1330 n. 1 (Fed.Cir.1987), patent claim 34 is not merely an "alternative theory of infringement," but rather provides a substantive basis for relief. If Mopex is precluded from asserting claim 34, it will have one less basis upon which to establish infringement of patent '685, which is a significant penalty. Thus, the involuntary dismissal of patent claim 34 constitutes the dismissal of a "claim" under Rule 72, even though it will not result in dismissal of the entire action for patent infringement, and is clearly dispositive as to that claim.

---

**2.** Mopex claims that the AMEX infringes patent claims 2, 13, and 24 by permitting the trading of certain exchange-traded funds on the AMEX. Mopex now seeks to assert that the AMEX also infringes claim 34 by using an "electronic data processing method" to electronically trade the same exchange-traded funds. *See* Patent '685, Ex. M to Grossman Dec. Because all of the claims are based on the trading of exchange-traded funds, they arise out of the "same transaction or series of transactions."

**3.** For clarity, I distinguish a "claim" under Rule 72 from a claim in the '685 patent by referring to the latter as a "patent claim."

Moreover, it appears as if Magistrate Dolinger recognized the dispositive nature of this matter by choosing to make a report and recommendations rather than enter an order. *See United States v. Nabisco, Inc.,* No. CV-86–3277, 1987 WL 14085, at *7 n. 4, 1987 U.S. Dist. LEXIS 16795, at *9 n. 4 (E.D.N.Y. July 10, 1987) (interpreting the magistrate's decision to make a recommendation rather than an order as a suggestion of *de novo* review).

Because I find that the preclusion of claim 34 is clearly dispositive, Judge Dolinger's R & R must be reviewed under a *de novo* standard. In any event, classification of the magistrate judge's recommendation as dispositive or non-dispositive is insignificant in the instant matter because I find that the R & R should be upheld under either standard for the reasons that follow.

## V. LEGAL STANDARD

Rule 26(e)(2) of the Federal Rules of Civil Procedure provides that a litigant is "under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during discovery in writing." Under Rule 37(c)(1), the penalty for failure to meet this obligation is clearly defined: "A party that without substantial justification fails to ... amend a prior response to discovery as required by Rule 26(e)(2), is not, unless the failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."

■ The purpose of these rules is to avoid "surprise" or "trial by ambush." *See Transclean Corp. v. Bridgewood Servs., Inc.,* 77 F.Supp.2d 1045, 1061 (D.Minn.1999) (Rule 26(e)(2) "has a simple but important purpose; namely, to prevent [t]rial by ambush"), *aff'd in relevant part,* 290 F.3d 1364 (Fed.Cir. 2002); *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.,* 911 F.Supp. 76, 79–80 (E.D.N.Y. 1996) (Rule 26(e)(2) is designed to facilitate the objective of the Federal Rules of Civil Procedure by "eliminat[ing] surprise").

■ Rule 37(c)(1)'s preclusionary sanction is "automatic" absent a determination of either "substantial justification" or "harmlessness." *See Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir.1998); *In re Motel 6 Sec. Litig.,* 161 F.Supp.2d 227, 243 (S.D.N.Y.2001); *Bastys v. Rothschild,* No. 97 Civ. 5154, 2000 WL 1810107, at *26 (S.D.N.Y. Nov. 21, 2000). "Substantial justification means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" *Henrietta D. v. Giuliani,* No. 95 Civ. 0641, 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 2001) (citation omitted). "Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure." *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D.Kan.1995). The burden to prove substantial justification or harmlessness rests with the dilatory party. *See Wright v. Aargo Sec. Servs., Inc.,* No. 99 Civ. 9115, 2001 WL 1035139, at *2 (S.D.N.Y. Sept. 7, 2001) (citations omitted).

■ Despite the "self-executing" nature of Rule 37(c)(1), the imposition of sanctions under the rule is a matter within the trial court's discretion. *See Jockey Int'l, Inc. v. M/V "Leverkusen Express",* 217 F.Supp.2d 447, 452 (S.D.N.Y.2002) (citations omitted). Preclusion of evidence is generally a disfavored action. *See Ward v. National Geographic Soc'y,* No. 99 Civ. 12385, 2002 WL 27777, at *2 (S.D.N.Y. Jan. 11, 2002) (acknowledging that preclusion is a "drastic remedy" to be imposed only "in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure") (citations omitted).

## V. DISCUSSION

■ There is no doubt that Mopex failed to comply with Rule 26(e)(2). The AMEX's discovery requests specifically asked Mopex to identify the patent claims that it was asserting were being infringed. The only independent claims that Mopex identified during discovery were patent claims 2, 13, and 24. At no time during the discovery period did Mopex amend its prior responses

to plaintiff's discovery requests or otherwise supplement its earlier representations as to the patent claims being infringed. It was not until one month after fact discovery had closed that Mopex amended its contentions to include patent claim 34. Such late supplementation of Mopex's discovery responses is clearly "unseasonable." Thus, the relevant question is whether Mopex's unseasonable supplementation was harmless or substantially justified.

### A. Harm to Plaintiff

Mopex objects to Judge Dolinger's finding that the AMEX's trial preparation was unfairly prejudiced by Mopex's late assertion of claim 34. *See* Obj. at 3. Upon review of the entire record, I agree with Judge Dolinger that Mopex has failed to meet its burden of demonstrating lack of prejudice for the following reasons.

*First*, by injecting patent claim 34 into the case five weeks after the completion of fact discovery, Mopex deprived the AMEX of the opportunity to conduct needed fact discovery on the amended responses unless it agreed to a substantial delay of the case, which was otherwise ready for dispositive motion practice and, if needed, a trial. *See Transclean*, 77 F.Supp.2d at 1063 (precluding defendant from raising new theories of patent invalidity because the "shift in arguments, after the close of discovery, [ ] precluded the [p]laintiffs from conducting discovery on these issues, clearly to the [p]laintiffs' prejudice"); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, No. 95 C 0673, 1996 WL 680243, at *8 (N.D.Ill. Nov. 21, 1996) (finding plaintiff was "prejudicially surprised" where defendants failed timely to supplement their interrogatory responses to include the basis for their patent defense). If the AMEX had learned of Mopex's patent claim 34 theory in a timely manner, it presumably would have pursued fact discovery unique to patent claim 34. It must be remembered that the AMEX had been asking repeatedly for this information for more than a year. *See supra* Part I. Discovery on patent claim 34 was particularly important because the subject matter of the claim is significantly different than that of the other asserted claims. *See*

AMEX Response to Mopex, Inc.'s Objections to Magistrate Judge Dolinger's Report and Recommendation ("AMEX Response") at 14 (describing the need to serve additional interrogatories and take additional depositions on claim 34 because it is "directed toward an electronic trading system" rather than a "product."); *see also* Obj. at 6 (acknowledging "claim 34 is different in scope than the other claims at issue").

*Second*, the AMEX was required, at the last minute, to have its expert assess patent claim 34 and prepare a supplemental report without the benefit of fact discovery specific to that claim, which the AMEX otherwise would have provided had Mopex identified the claim during fact discovery. If discovery were to be reopened so that the AMEX could take discovery directed to claim 34, the AMEX would not only suffer a significant delay in the resolution of its case, but also need to have its expert again amend his report to address the newly discovered material.

Mopex argues that the "perceived harm" of "surprise or trial by ambush" is not present in this case because the AMEX "has been fully prepared to defend its infringement of claim 34 since almost the beginning of the litigation." *Id.* In particular, Mopex argues that the AMEX had all the information it needed because it obtained, at the outset of the litigation, four legal opinions indicating that claim 34 was invalid and not infringed. *See* Obj. at 4 (claiming that "no more facts were necessary" to defend against an allegation of infringement of claim 34).

The fact that the AMEX obtained opinions from counsel that addressed the validity of claim 34, among other things, does not mean that the AMEX is not entitled to discovery on that claim. The opinions were based on the limited information available to the AMEX at the time. *See* AMEX Response at 13–14 (discussing counsel's limited ability to render an opinion based on the absence of information on prior art and claim construction). Discovery would have enabled the AMEX to explore further the issues raised in the opinion. *See id.* at 14 (listing potential questions the AMEX would have asked Mo-

pex regarding Mopex's allegations of infringement of claim 34).

To suggest, as Mopex does, that the legal opinions obviated the need for discovery on claim 34, by virtue of the fact that they addressed claim 34 in a broader discussion of all of the claims, would mean that the AMEX had no need to take discovery on any of Mopex's claims in this case. Clearly, a party has a right to conduct discovery on the claims brought against it, even if it already has some information on such claims. *See Devlin v. Scardelletti*, 536 U.S. 1, 122 S.Ct. 2005, 2013, 153 L.Ed.2d 27 (2002) (recognizing that the Federal Rules of Civil Procedure entitle the right to conduct discovery).

Likewise, the fact that the AMEX obtained these legal opinions does not mean, as Mopex contends, that the AMEX knew from the beginning of the litigation that claim 34 was at issue. *See* Obj. at 5. The AMEX initially requested opinions on the validity of each of the claims in the '685 patent because it was unaware of which claims Mopex was asserting. Once Mopex identified the specific patent claims that it was alleging were being infringed, the AMEX believed Mopex was not planning to assert patent claim 34 and therefore limited its discovery efforts to the identified claims in reliance on Mopex's representation. *See Thermos Co. v. Starbucks Corp.*, No. 96 C 3833, 1999 WL 203822, at *5 (N.D.Ill. Apr. 6, 1999) (granting plaintiff's motion to preclude defendant from asserting new theory of non-infringement of patent after close of fact discovery because plaintiff was prejudiced by having relied on defendant's discovery concessions).

Mopex additionally argues that it had no duty under Rule 26(e)(2) to advise the AMEX that claim 34 was at issue because the AMEX learned of Mopex's assertion of claim 34 during the deposition of Cliff Weber, a senior officer at the AMEX. *See* Mopex, Inc.'s Reply in Support of its Objections to Magistrate Judge Dolinger's Report and Recommendations ("Mopex Rep.") at 3 (citing duty to supplement discovery responses with additional information if that "information has not otherwise been made known to the other parties during the discovery process or in writing"). During the deposition,

Mopex inquired, for the first time in the litigation, about the AMEX's position on patent claim 34. *See* Weber Dep. at 567. Mr. Grossman, counsel for the AMEX, was surprised by the question, given that Mopex had never before asserted any infringement of patent claim 34. He asked specifically whether it was now Mopex's position that AMEX is infringing patent claim 34, *see* Weber Dep. at 568, to which Mopex's attorney responded that he would not know until the end of discovery. *See id.* ("Well, I think I need to finish discovery to find out exactly what we are going to do, and that's how come I'm asking him with regard to [patent] claim 34.").

The relevant question is whether the AMEX was made aware during Weber's deposition that Mopex's prior response to its inquiries was incorrect. Because Mopex did not answer definitively whether it intended to amend its prior responses to include claim 34, the correction was not made known to the AMEX at the deposition. Mopex was therefore "under a duty seasonably to amend," *see* Fed.R.Civ.P. 26(e)(2), its prior discovery responses, which it did not do until one month after the close of fact discovery.

Because the AMEX did not know during discovery that its alleged infringement of patent claim 34 was now at issue, Mopex's failure to amend seasonably was not harmless. The AMEX was prejudiced by Mopex's late disclosure of its claim regarding patent claim 34 because the AMEX was: (1) deprived of the opportunity to pursue needed fact discovery unless it was willing to accept a substantial delay in the case, and (2) compelled to have its expert assess the issue at the last minute without the benefit of fact discovery.

**B. Unjustifiable Delay**

Mopex additionally objects to Judge Dolinger's finding of no substantial justification for Mopex's delay in supplementing its discovery responses. *See* Obj. at 6. I find, from my review of the record, that Mopex indeed has failed to sustain its burden of demonstrating substantial justification because it offers no viable explanation for why it waited

until one month after the close of discovery to assert patent claim 34.

Mopex argues that it was justified in waiting until Weber's deposition in January 2002 to ask the AMEX about patent claim 34. *See* Obj. at 11. In particular, Mopex argues that it was not obligated to seek information about patent claim 34 from any of the AMEX officials who testified before Weber, especially because many of them identified Weber as the best person to answer questions about the operation of exchange traded funds. *See* Obj. at 7–11. Yet, Mopex offers no satisfactory explanation why it waited until the end of fact discovery to take Weber's deposition when it knew that Weber was a critical witness and Weber had been made available as early as June 2001. *See* Mopex Reply at 7–8 (acknowledging that Weber had been designated in thirty-three of the forty-three subject areas identified in the AMEX's notice of deposition); 5/9/01 Letter from Grossman to Richard C. Himelhoch, counsel for Mopex, Ex. L to Grossman Dec. (stating that the AMEX can make Weber available on June 1, 2001). The fact that Mopex had over fifty other depositions to take around the country, *see id.* at 7, does not explain why Mopex chose to conduct the other depositions first, and why it waited to ask Weber about patent claim 34 until Weber's third deposition day. *See* R & R at 16. It is hard to understand why Mopex would not have prioritized the deposition of the sole witness that could help it to define the scope of the AMEX's alleged infringement.

Mopex also gives no colorable explanation why it took five weeks after it received the deposition transcript and errata sheets to supplement its answers. It is inconceivable that it could have taken Mopex that long to decide whether to assert an infringement of patent claim 34. Mopex's deposition questions of Weber clearly indicate that it had already given the issue significant thought. *See* R & R (finding "no real question that Mopex had a [patent] claim 34 theory in mind long before it posed to Mr. Weber the very specifically worded questions relevant to that theory"). There is no reason why Mopex could not have amended its prior discovery responses immediately upon hearing Weber's testimony, or at the latest, a few days after the deposition.

Mopex knew full well that the AMEX had not yet learned the full extent of Mopex's legal claims and that the AMEX's counsel had been seeking such disclosure through all available means of discovery since early 2001. The fact that Mopex did not decide immediately after Weber's deposition whether it would assert claim 34 and then promptly inform the AMEX of its decision constitutes flagrant disregard of the Federal Rules of Civil Procedure. Waiting more than a year to consider and provide requested supplementation is simply unacceptable.

Because Mopex has offered no valid reasons why it waited until after the close of fact discovery to amend its discovery responses, I find that Mopex's tardy supplementation was not substantially justified.

## V. CONCLUSION

For the reasons stated above, Mopex's objections are denied. I hereby accept and adopt Judge Dolinger's R & R granting the AMEX's motion to preclude Mopex from asserting infringement of patent claim 34 of the '685 patent.

